UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| 6TH SENSE LURE CO., LLC D/B/A 6TH SENSE FISHING, <br>   *Plaintiff,* <br><br> vs. <br><br> MATTHEW MILATZ, LLC D/B/A LIV FISHING AND STIK5 RODS, LLC. <br>   *Defendants.* | Civil Action No. <u>4:26-cv-2658</u> <br><br><br> **JURY TRIAL DEMANDED** |

## <u>ORIGINAL COMPLAINT</u>

Plaintiff 6th Sense Lure Co., LLC d/b/a 6th Sense Fishing ("6th Sense") files this Original Complaint against Defendants Matthew Miltatz, LLC d/b/a LIV Fishing and Stik5 Rods, LLC (collectively "Defendants").[1]

### I.  INTRODUCTION

1. 6th Sense is a leading manufacturer of fishing lures, rods, tackle, apparel, and headwear since 2008 and has spent well over a decade building up its goodwill and reputation among fishermen and women all across the United States. Unable to build its own industry reputation and seeking to piggyback off 6th Sense's success, Defendants resorted to copying 6th Sense's trade dresses, copying one of its trademarks, and presenting false advertising to consumers. This is an action to recover injunctive relief and damages associated with Defendants' illegal conduct.

---

[1] 6th Sense's allegations relating to itself are based on personal knowledge, while 6th Sense's allegations relating to Defendants are made upon information and belief.

## II.     THE PARTIES

2.      Plaintiff 6th Sense is a Texas limited liability company with its principal place of business located at 11959 Old Montgomery Rd., Willis, TX 77318.

3.      Defendant Matthew Milatz, LLC d/b/a LIV Fishing ("LIV") is a Texas limited liability company with an office at 4700 US Highway 377 S, Suite 2B, Aubrey, TX 76227-3756.   LIV may be served through its registered agent: Texas Registered Agent, LLC 5900 Balcones Drive #100 Austin, TX 78731 USA.

4.      Defendant Stik5 Rods, LLC ("Stik5") is a Texas limited liability company with an office at 4700 US Highway 377 S, Suite 2B, Aubrey, TX 76227-3756. Stik5 may be served at its registered agent: United States Corporation Agents, Inc., 1601 Clarence Dr., Suite 250, Frisco, TX 75033.

## III.     JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendants because they are Texas limited liability companies and, therefore, reside in this state.

8.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

9.      Venue is proper in this judicial district pursuant to at least 28 U.S.C. § 1391(b) because, Defendants do a substantial amount of business in this District, have sold significant quantities of its products in this District, and have engaged in and are engaging in statutory violations and activities that are causing substantial injury to 6th Sense in this District.  Defendants sell their competing products, as well as many other products, online via their website at https://www.livfishing.co/. *See,*

*e.g.,* Exhibit A.   This website is used by Defendants to sell, contract with, and ship their competing products (and other products) to consumers in this District and nationally.   Defendants also advertise and promote their products around fishing lakes in this District and publish online content in this District that is seen by thousands of residents of this District.  *See, e.g.,* Exhibit B.  Defendants also store a substantial amount of their products in this District, including at warehouses maintained by large retails such as Amazon.com.

## IV.   BACKGROUND FACTS

### A.   The Parties

10.   Founded in 2008, 6th Sense has spent over a decade earning the trust of fishermen and women across the United States.  6th Sense built its brand based on unique fishing equipment, tackle, and apparel, which consumers have come to trust.  6th Sense has spent an incredible amount of time and expense to develop their brand, marketing techniques, and the look of their brand and products.  Consumers have come to recognize 6th Sense's brand, marketing, and its products and understand these to be synonymous with quality.

11.   Found in Washington state in 2021, Defendant Matthew Miltatz, LLC d/b/a LIV Fishing subsequently relocated its business to Northern Texas in January of 2024. Defendant Matthew Miltatz, LLC d/b/a LIV Fishing subsequently acquired Stik5 Rods, LLC and moved that company to Texas in February of 2024. Defendants were unable or unwilling to build their own brand so they sought to piggy-back off 6th Sense's longstanding reputation in this industry and this market, which led them

to copy several of 6th Sense's products, trade dresses, and at least one of its trademarks. This also led them to present false advertising about their products to consumers. Defendants' illegal acts are examined below.

**B.     Defendant LIV Copied 6th Sense's Webpage**

12.     6th Sense has a unique webpage design. Exhibit A ("Webpage"). An example of the top and bottom of 6th Sense's webpage is shown below:



Exhibit A. This webpage features a uniquely all black backdrop with white text and also includes a prominent display of its logo at the center of the top of the webpage. Between the black top and bottom banners, 6th Sense shows its products with an emphasis on keeping the black/white feel of the website with darkened or shadowed high-definition images and overlayed text (much of which is white). *Id.*   6th Sense also uses black/white banners across its website as you scroll through it. *Id.*

13.     6th Sense's webpage includes other unique features.  When a user first goes to 6th Sense's webpage, it will prompt the visitor to "Unlock a Mystery Discount" usings its black and white look and feel, as shown below:



Exhibit A. 6th Sense has a shipping offer at the top center of the website in white text on top of its black background:

Free Ground Shipping and $10 2-Day Shipping with orders over $75 (Continental U.S. Only) (Excludes Rods)

*Id.*

14.     6th Sense's Webpage is inherently distinctive and/or it has acquired distinctiveness through secondary meaning.  These features described herein are also non-functional.  This Webpage is a trade dress of 6th Sense.

15.     Defendant LIV copied 6th Sense's Webpage design.  LIV uses the same all black backdrop with white text and also includes a prominent display of its logo at the center of the top of the webpage:



Exhibit B.  Between the black top and bottom banners, LIV also has high-definition pictures of its fishing products and apparel with an emphasis on keeping the black/white feel of the website with darkened or shadowed high-definition images and with a focus on white overlayed text.

16.     LIV copied other details about 6th Sense's Webpage.  When a user first visits LIV's webpage, it will prompt the visitor to unlock a "Mystery Discount" using 6th Sense's same black and white look and feel, as shown below:



Exhibit B.  LIV also displays a shipping offer in white text across the top and center portion of its webpage:

Id.

17.    The intent and purpose behind LIV's website copy is to confuse consumers about the source of its services by attempting to unfairly utilize 6th Sense's longstanding reputation and goodwill.

**C.    Defendant LIV Copied 6th Sense's Rod Sleeves and Made False Claims**

18.    6th Sense has a unique look and feel for its neoprene rod sleeve covers. *See, e.g.,* Exhibit C ("Rod Sleeves").  These Rod Sleeves are featured with an exterior badge at the top prominently displaying a large image of 6th Sense's black/white logo

on the left with the word fishing separated by a line and displayed on the right side of the badge.  Examples of 6th Sense's Rod Sleeves with badges are shown below:



Exhibit C.  For its badges, 6th Sense uses white text with a black background.  It also has black on both ends of the rod sleeve.  6th Sense offers a variety of colors and patterns for its Rod Sleeves.  *Id.*

19.    6th Sense's Rod Sleeves are inherently distinctive and/or they have acquired distinctiveness through secondary meaning.  These features described herein are also non-functional.  These are trade dresses of 6th Sense.

20.    LIV copied 6th Sense's Rod Sleeve trade dress.  LIV Shows its neoprene rod sleeves with an exterior badge at the top displaying LIV's black/white logo on the left with a line separating the word fishing on the right:



*See, e.g.,* Exhibit D. LIV uses white text with a black background on its badges. LIV has black on both ends of its rod sleeve. LIV uses solid colors and camo patterns for the rest of its rod sleeve. *Id.*

21.    The intent and purpose behind LIV's rod sleeve copy is to confuse consumers about the source of its services by building on 6th Sense's longstanding reputation and goodwill.

## D.    Defendant LIV Made False Claims in Advertising

22.    As stated previously, 6th Sense has a unique look and feel for its Rod Sleeves. These Rod Sleeves are a popular consumer product for 6th Sense throughout the United States of America.

23.    LIV made false claims in their advertising campaigns for their rod sleeves by stating these products were the "#1 Rod Sleeve on the market," that "everyone" and "100,000" anglers were switching to this product, and that this product is the "best" on the market:





  

## LIV Fishing's Post



**LIV Fishing**
January 11, 2025 · 🌐

#1 Rod Sleeve on the market is ON SALE! Get 2 FREE FOR EVERY 6 YOU PURCHASE!

✔ Hook Resistant
✔ Reinforced Tip and Edging
✔ Rubber Opening
✔ They Float
✔ Doesn't SCRATCH Your Rod
✔ Adjustable Reel Strap

Don't miss out on this deal and protect your rods the LIV way!





By making these statements, LIV was telling consumers specific, measurable facts about its products and how they compare to others in the industry, which led consumers to believe that LIV had verified this information.   LIV did not verify this information, and this information is false.

24.     The intent and purpose behind LIV's false advertising was and is to confuse consumers about the quality or popularity of their product as compared to 6th Sense's competing product and/or to falsely inflate their market position over 6th Sense.    These statements were false, meant to influence consumers' purchasing decisions, and they did in fact influence consumers' purchasing decisions.

**E.     Defendant LIV Copied 6th Sense's Large Bait Bags**

25.     Originally released in December of 2022, the 6th Sense large and extra-large bait bags have a unique look and design.  *See, e.g.,* Exhibit E (collectively "Large Bait Bags").  To date, 6th Sense has sold a substantial amount of Large Bait Bags, and these bags are carried in several dealers throughout the United States of America.  The Large Bait Bags have a dual zipper configuration that runs down the middle, top of the bag creating a flexible upper flap over the top side that can be opened and then re-secured at one end:



*Id.* The bag further features a branded badge on the side pocket with 6th Sense's black-and-white "6" logo displayed the badge. The top of the Large Bait Bag contains a white badge. This Large Bait Bag also has a handle on both ends and a connecting handle on the zippers. 6th Sense provides these bags in several variations, including solid colors, multi-colored patterns, and various camouflage patterns. *Id*.

26.    6th Sense's Large Bait Bags are inherently distinctive and/or they have acquired distinctiveness through secondary meaning. These features described herein are also non-functional. These features are all protected trade dresses of 6th Sense.

27.    LIV intentionally copied 6th Sense's Large Bait Bag trade dress for its own profit. LIV's bait bags have the same dual zipper configuration, with connecting handle, on top of the bag and a flexible upper flap securing on the front side:



*See, e.g.,* Exhibit F.   LIV's bag also has a branded badge on either side displaying LIV's logo in white with a black backdrop and a white badge on the top.  In addition, LIV's bait bag has a padded handle on both ends.  *Id.*

28.    The intent and purpose behind LIV's bait bag copy was and is to copy 6th Sense's trade dress to cause consumer confusion about the source of its goods and piggy-back on 6th Sense's longstanding reputation and goodwill throughout the fishing industry.

**F.    LIV Copied 6th Sense's Clear Bait Bag**

29.    6th Sense has a unique look and feel for its clear bait bags.  Exhibit D ("Clear Bait Bags").  These bags are made to be transparent, have a top zipper with black zipper pull, have a wide, horizontal strip of nylon fabric along the top portion below the zipper, have narrower nylon strips running down both side edges, and feature 6th Sense's black and white logo on an exterior white badge across the top middle of the bag:



*See, e.g.,* Exhibit G.

30.     6th Sense's Clear Bait Bags are inherently distinctive and/or they have acquired distinctiveness through secondary meaning.  To date, 6th Sense has sold a substantial amount of Clear Bait Bags and these bags are carried in several dealers throughout the United States of America. These features described herein are also non-functional. These features are all protected trade dresses of 6th Sense.

31.     LIV copied 6th Sense's Clear Bait Bag trade dress.   After moving to Texas, LIV began offering the same sized transparent bag with an upper, horizontal strip of nylon fabric running under the top zipper, a black zipper pull, narrower nylon strips running down both side edges, and its black/white logo at the top and center of the bag on an exterior badge:



*See, e.g.,* Exhibit H.

32.     The intent and purpose behind LIV's bait bag copy is to copy 6th Sense's trade dress to cause consumer confusion about the source of its goods and piggy-back on 6th Sense's longstanding reputation and goodwill throughout the fishing industry.

**G.     Defendants LIV and Stik5 Have Copied 6th Sense's Common Law and Registered Trademark**

33.     6th Sense has long used the following "Vega" trademark for one of its fishing rod series and lure lineup:





The 6th Sense Vega Frog is hitting the market after years of R&D from our Team 6 experts and hitting it HARD. We engineered the Vega with a hybridized design incorporating the features of a walking, skipping, spitting, & popping frog without compromising the key design elements. The Vega comes equipped with a heavy gauge, 5/0 black nickel braid hook, delivering maximum hook penetration and the ability to rip those giants from the thickest of cover. The slender keel shape belly generates a 180-degree walking motion with less effort, putting more fish in the boat. Offering a selection of more than 15 realistic color schemes, we are confident the Vega Frog will exceed your frog-fishing needs.



One of the most important features of this frog is the unique leak-resistant belly plug— which lets you spend more time fishing and less time squeezing out water.

## Vega Frog

**PRODUCT SPECS**

**Length:** 70 mm
**Weight:** 5/8 oz
**Hook Size:** 5/0

*See, e.g.,* Exhibit I.   This trademark is registered with the United States Patent and Trademark Office under Serial No. 98463103 for fishing rods, fishing lures, and fishing tackle. 6th Sense's use of this mark has been continuous since August of 2020, distinctive, and has gained recognition in the market as a durable, well-designed fishing rod for topwater frog lures, other techniques requiring a stout rod blank, and for frog type lures.

34.     On or about March of 2024, Defendants introduced, and currently use, a confusingly similar "Versa" mark for its same type of fishing rods meant to be used for frog fishing and heavy cover techniques:



*See, e.g.,* Exhibit J.

35.     Defendants' purpose and intent behind using this confusingly similar mark is to confuse consumers about the nature and origin of its goods.   Defendants further want to steal the use of 6th Sense's reputation and goodwill by confusing consumers.

## H.     Defendants' Infringement is Willful

36.     The pure volume of infringement, coupled with the closeness of Defendants' copied designs to 6th Sense's designs, prove that Defendants willfully copied 6th Sense's trade dresses and trademark.   Further, by at least November of

2024, Defendants were given notice of their trade dress and trademark infringements. Exhibit K. Since receiving this notice, Defendants have continued undaunted to infringe 6th Sense's intellectual property rights as described herein. Defendants' infringement has been, and continues to be, willful.

## V.    CAUSES OF ACTION

**A.    Trade Dress Infringement
(Lanham Act Violation, 15 U.S.C. § 1125)**

37.    6th Sense incorporates the preceding paragraphs by reference.

38.    6th Sense's trade dresses are eligible for trade dress protection. 6th Sense's trade dresses are inherently distinctive and/or are unique and well-known dresses which have obtained secondary meaning to the consumers in the fishing industry.

39.    6th Sense's trade dresses are not merely functional.

40.    6th Sense is the senior user of the trade dresses described herein and has been continuously using them in commerce.

41.    LIV took a short cut and illegal "free ride." LIV has utilized 6th Sense's distinctive trade dress designs for profit in direct competition with 6th Sense.

42.    LIV's deliberate and willful use of 6th Sense's trade dresses in connection with its website and its fishing products is likely to cause confusion among consumers as to the source of the services and has caused said confusion. LIV's intentional infringement has caused blurring of 6th Sense's trade dresses and has tarnished 6th Sense's trade dresses. LIV's unauthorized use of 6th Sense's trade dresses constitutes trade dress infringement under the Lanham Act.

43.     6th Sense has been damaged by LIV's infringement of its trade dresses and seeks all damages available to it, including, but not limited to, its lost profits (or a reasonable royalty), Defendants' profits, damage to goodwill, and damages for corrective advertising costs.   6th Sense is further entitled to statutory and treble damages and to recover its cost and attorneys' fees in bringing this action as set forth in the Lanham Act.

**B.     False Designation of Origin**
**        (Lanham Act Violation, 15 U.S.C. § 1125)**

44.     6th Sense incorporates the preceding paragraphs by reference.

45.     The Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits the use in commerce of any word, term, name, symbol, device, or any combination thereof, or any false or misleading designation of origin or false or misleading representation of fact, that is likely to cause confusion, mistake, or deception as to the affiliation, connection, association, sponsorship, or approval of goods or services.

46.     Independently of the specific trade dress rights alleged elsewhere in this Complaint, Defendants have used and continue to use a confusingly similar overall commercial presentation to that used by 6th Sense, including but not limited to, website layout and structure, marketing prompts and promotional mechanisms, product line presentation and positioning, branding themes, color schemes, and visual emphasis.  This includes the manners in which Defendants market, promote, and sell their goods in interstate commerce. Defendants' confusingly similar commercial impressions are used in a way that falsely suggests an affiliation, connection, sponsorship, or association with 6th Sense.

47.     Defendants' conduct constitutes a false designation of origin and false association because it is likely to cause and has caused consumers to mistakenly believe that Defendants' goods originate from, are sponsored by, are affiliated with, or are approved by 6th Sense, when they are not.

48.     Defendants deliberate and willful false designation of origin and false association in connection with its website and its fishing products is likely to cause confusion among consumers as to the source of the services and has caused said confusion. Defendants' intentional infringement has blurred 6th Sense's brand and trade dresses.  It has also tarnished 6th Sense's brand and trade dresses. LIV's unauthorized use of 6th Sense's trade dresses constitutes a false designation of origin under the Lanham Act.

49.     6th Sense has been damaged by Defendants' infringement by false designation of origin and false association, and seeks all damages available to it, including, but not limited to, its lost profits (or a reasonable royalty), Defendants' profits, damage to goodwill, and damages for corrective advertising costs.  6th Sense is further entitled to statutory and treble damages and to recover its cost and attorneys' fees in bringing this action as set forth in the Lanham Act.

**C.    Trade Dress Infringement**
**(Texas Common Law)**

50.     6th Sense incorporates the preceding paragraphs by reference.

51.     6th Sense's trade dresses are eligible for common law trade dress protection.  6th Sense's trade dresses are inherently distinctive and/or are unique and

well-known dresses which have obtained secondary meaning to the consumers in the fishing industry.

52.    6th Sense's trade dresses are not merely functional.

53.    6th Sense is the senior user of the trade dresses described herein and has been continuously using them in commerce.

54.    LIV took a short cut and illegal "free ride." LIV has utilized 6th Sense's distinctive trade dress designs for profit in direct competition with 6th Sense.

55.    LIV's deliberate and willful use of 6th Sense's trade dresses in connection with its website and fishing products is likely to cause confusion among consumers as to the source of the services. LIV has caused confusion among consumers. LIV's intentional infringement has caused blurring of 6th Sense's valuable trade dresses and has tarnished these trade dresses. LIV's unauthorized use of 6th Sense's trade dresses constitutes trade dress infringement under Texas common law.

56.    6th Sense has been damaged by LIV's infringement of its trade dresses and seeks all damages available to it, including, but not limited to, its lost profits (or a reasonable royalty), Defendants' profits, damage to goodwill, and damages for corrective advertising costs. 6th Sense further asks the Court to find this case exceptional and award its attorneys' fees and costs associated with this action. 6th Sense is further entitled to punitive or exemplary damages because Defendants' infringement has been willful, intentional, and/or committed in bad faith.

**D.     Trademark Infringement and Dilution**
**(Lanham Act, 15 U.S.C. § 1125)**

57.     6th Sense incorporates the preceding paragraphs by reference.

58.     6th Sense has a valid and legally protectable mark consisting of its "Vega" mark, which has been continuously used in commerce and is distinctive and/or has gained secondary meaning with consumers in the fishing industry.

59.     6th Sense has been using this mark before Defendants, owns the registered trademark, and has continuously used the mark in commerce. 6th Sense's mark is widely recognized by the relevant consuming public.

60.     Defendants use of their infringing "Versa" mark for the exact same product line and usage as 6th Sense is likely to cause confusion and has caused confusion in consumers in the fishing industry such that they will and have mistakenly believed that Defendants' goods using this mark are associated, sponsored, or produced by 6th Sense.  Defendants use of their infringing mark has created an association that harms 6th Sense's famous mark.  LIV's intentional infringement has caused blurring of 6th Sense's valuable trademark and has tarnished this mark.

61.     6th Sense has been damaged as a result of Defendants' use of their infringing mark.  6th Sense seeks all damages available to it, including, but not limited to, its lost profits (or a reasonable royalty), Defendants' profits gained using the mark, damage to goodwill, and damages for corrective advertising costs.  6th Sense is further entitled to statutory and treble damages and to recover its costs and attorneys' fees in bringing this action as set forth in the Lanham Act.

**E.    Trademark Infringement
(Texas Common Law)**

62.    6th Sense incorporates the preceding paragraphs by reference.

63.    6th Sense has a valid and legally protectable mark consisting of its "Vega" mark, which has been continuously used in commerce and is distinctive and/or has gained secondary meaning with consumers in the fishing industry.

64.    6th Sense has been using this mark before Defendants and has continuously owned the mark.

65.    Defendants use of their infringing "Versa" mark is likely to cause confusion and has caused confusion in consumers in the fishing industry such that they will and have mistakenly believed that Defendants' goods using this mark are associated, sponsored, or produced by 6th Sense.

66.    6th Sense has been damaged as a result of Defendants' use of their infringing mark.  6th Sense seeks all damages available to it, including, but not limited to, its lost profits (or a reasonable royalty), Defendants' profits gained using the mark, damage to goodwill, and damages for corrective advertising costs.  6th Sense is further entitled to punitive or exemplary damages because Defendants' infringement has been willful, intentional, and/or committed in bad faith.

**F.    Trademark Dilution
(Texas Business & Commerce Code § 16.103)**

67.    6th Sense incorporates the preceding paragraphs by reference.

68.    Texas Business & Commerce Code § 16.103 protects distinctive marks from dilution of their distinctive quality, regardless of the presence or absence of

competition between the parties or the likelihood of confusion, mistake, or deception. This claim is asserted independently of 6th Sense's infringement and unfair competition claims and does not require proof of likelihood of confusion.

69.     6th Sense owns and has long used the distinctive "Vega" trademark in connection with fishing rods and fishing lures. 6th Sense has continuously used its "Vega" mark since August of 2020. Through continuous use, extensive sales, and substantial marketing and promotion, the "Vega" mark has acquired distinctive quality and recognition within the State of Texas, including among consumers and dealers in the fishing industry. 6th Sense's "Vega" products can be found in retailers throughout State of Texas and the United States of America.

70.     Defendants adopted and used the confusingly similar "Versa" mark in Texas after the "Vega" mark became distinctive. Defendants' "Versa" mark is used on fishing rods intended for the same fishing applications and consumer base as 6th Sense's Vega-branded products.  Defendants' dilution of the "Vega" mark is occurring in the State of Texas through the marketing, advertising, sale, and distribution of Defendants' products to Texas consumers. Defendants' use of the "Versa" mark in Texas is likely to cause dilution of the distinctive quality of the "Vega" mark by blurring the unique association between the "Vega" mark and 6th Sense thereby weakening the "Vega" mark's capacity to identify and distinguish 6th Sense's goods from those of others.

71.     Defendants' actions were undertaken with knowledge of 6th Sense's prior rights in the "Vega" mark and despite 6th Sense's cease and desist request.

These actions are taken with the intent to trade on the distinctiveness and goodwill associated with the "Vega" mark.  As a direct and proximate result of Defendants' dilution of the "Vega" mark, 6th Sense has suffered and will continue to suffer injury, including loss of the mark's distinctiveness and damage to its valuable goodwill and loss of sales.  6th Sense is entitled to recover all damages available to it for Defendants' trademark dilution, including, but not limited to its actual damages, Defendants' profits, and its attorneys' fees. 6th Sense is entitled to injunctive relief to prevent further dilution of its "Vega" mark and, because Defendants' conduct was willful and intentional, to recover all additional relief available under Texas law, including additional damages, attorneys' fees, and costs.

### G.   False Advertising (Lanham Act, 15 U.S.C. § 1125)

72.   6th Sense incorporates the preceding paragraphs by reference.

73.   Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits the use in commerce of any false or misleading description of fact, or false or misleading representation of fact, in commercial advertising or promotion, that misrepresents the nature, characteristics, qualities, or origin of a person's goods or services.

74.   In the course of advertising, marketing, and promoting their fishing products, LIV made false and misleading representations of fact, either expressly or by necessary implication, including but not limited to representations that their rod sleeves were number one on the market, their products possess the same design origin(s), pedigree, performance characteristics, or market recognition as 6th Sense's

products, that consumers were switching to LIV's products, that LIV's products were the best, and that LIV independently developed their product designs and branding when, in fact, those designs and presentations were intentionally copied from 6th Sense. These false and misleading representations were disseminated in commercial advertising or promotion and were intended to influence purchasing decisions by consumers in interstate commerce and did in fact influence purchasing decisions.

75.    LIV's representations were material because they were likely to influence consumers' purchasing decisions by misleading consumers as to the origin, quality, and credibility of Defendants' products relative to those of 6th Sense and did in fact influence consumers' purchasing decisions.    LIV's statements and representations were either literally false or intentionally misleading.  LIV knew, or in the exercise of reasonable care should have known, that these representations were false or misleading at the time they were made.

76.    As a direct and proximate result of LIV's false advertising, 6th Sense has suffered and continues to suffer competitive injury, and 6th Sense is entitled to recover all of its actual damages, 6th Sense's lost profits, Defendants' profits, damages related to 6th Sense's goodwill, and to an injunction stopping Defendants' conduct.  LIV's violations were willful and deliberate, further entitling 6th Sense to treble damages, attorneys' fees, and costs.

## H.     Unfair Competition
##        (Texas Common Law)

77.     6th Sense incorporates the preceding paragraphs by reference.

78.     6th Sense's trade dresses were created through extensive time, labor, skill, and money.  LIV copied and infringed 6th Sense's trade dresses to obtain an illegal "free ride" and are benefitting from these trade dresses by using them to generate profit in the marketplace in competition with 6th Sense.   This is unfair competition.

79.     6th Sense's trademark was also created and developed through extensive time, labor, skill, and money.  Defendants' illegal use of their similar mark was to obtain an illegal "free ride," and they benefitted from this use in competition with 6th Sense. This is unfair competition.

80.     6th Sense has suffered damages as a result of Defendants' unfair competition and seeks its actual damages caused by Defendants' conduct.

## I.     Unjust Enrichment
##        (Texas Common Law)

81.     6th Sense incorporates the preceding paragraphs by reference.

82.     6th Sense's trade dresses were created through extensive time, labor, skill, and money.  LIV copied and infringed 6th Sense's trade dresses to obtain an illegal "free ride" and are benefitting from these trade dresses by using them to generate profit in the marketplace to the detriment of 6th Sense.   LIV would be unjustly enriched if it was allowed to keep the benefits of its use of these trade dresses without paying 6th Sense for this use.

83.     6th Sense's trademark was also created and developed through extensive time, labor, skill, and money.  Defendants' illegal use of their similar mark was to obtain an illegal "free ride."  Defendants benefited from this use to the detriment of 6th Sense.   Defendants would be unjustly enriched if they were allowed to keep the benefits of its use of this trademark without paying 6th Sense for this use.

84.     6th Sense seeks all of its actual damages from Defendants for unjust enrichment, including, but not limited to, its costs associated with obtaining the trade dresses, lost profits, and damages associated with the dilution to 6th Sense's intellectual property.

## J.     Permanent Injunction
### (Lanham Act and Texas Common Law)

85.     6th Sense incorporates the preceding paragraphs by reference.

86.     As described herein, 6th Sense's injuries are irreparable and there are no adequate legal remedies to compensate for its injuries.

87.     The balance of hardships between 6th Sense and Defendants favors granting an injunction against the Defendants.

88.     A permanent injunction would not be adverse to public interest.

89.     This Court should permanently enjoin Defendants and their agents from using 6th Sense's trade dresses and trademark or anything similar.

## K.     Joint and Several Liability

90.     6th Sense incorporates the preceding paragraphs by reference.

91.     Defendants are joint and severally liable for at least their use of 6th Sense's trademark, because their acts have caused an indivisible injury.

## VI.　JURY DEMAND

92.　Pursuant to Fed. R. Civ. P. 38, 6th Sense demands a jury trial of all issues so triable.

## VII.　PRAYER FOR RELIEF

WHEREFORE, 6th Sense respectfully requests that the Court enter judgment as follows:

A.　An Order adjudging that Defendants violated the Lanham Act;

B.　An Order permanently enjoining Defendants from their use of 6th Sense's trade dresses and trademark as described herein including any similar or related uses;

C.　An Order requiring Defendants to disseminate corrective advertising to correct the false and misleading impressions created among consumers by their conduct;

D.　An Order directing an accounting by Defendants of their gains, profits, savings, and advantages realized by reason of their conduct, including a complete accounting of all revenue and profits realized by way of their products discussed herein;

E.　An Order awarding 6th Sense all damages available for Defendants' violations of the Lanham Act, including Defendants' profits, actual damages sustained by 6th Sense, and costs of Court;

F.　An Order under the Lanham Act (15 U.S.C. § 1117) trebling 6th Sense's damages as permitted;

G.    An Order under the Lanham Act (15 U.S.C. § 1117) finding that this case is exceptional and awarding 6th Sense all of its attorneys' fees and costs;

H.    An Order finding Defendants liable to 6th Sense for Texas common law trade dress infringement, Texas common law trademark infringement, Texas common law trademark dilution, Texas common law unfair competition, and Texas common law unjust enrichment;

I.    An Order awarding 6th Sense all damages available to it for Defendants' common and state law liability, including, but not limited to, an award of all actual economic damages, Defendants' profits, all special or exemplary damages, attorneys' fees, and costs of court;

J.    An Order awarding 6th Sense all damages available to it for the conduct described herein; and

K.    An Order granting 6th Sense such other and further relief as this Court may deem just and proper.

Dated:  April 2, 2026                    Respectfully submitted,

**BOWICK & LANEY, PLLC**

*/s/ Bradford T. Laney*
Bradford T. Laney
Robert M. Bowick
1512 Center Street, Suite 430
Houston, Texas 77008
Telephone: (713) 429-8050
Email: brad@bl.law
            bobby@bl.law

**Counsel for Plaintiff**
**6th Sense Lure Co., LLC d/b/a 6th**
**Sense Fishing**